UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE WASHINGTON, | No. 2:14-cv-0628 TLN DB P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ANDREW GUSTAFSON, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983 alleging defendant Miranda[1] was deliberately indifferent to his serious medical needs by determining that plaintiff no longer qualified for several medical accommodations for which plaintiff was previously approved at a different institution. Before the court is defendant Miranda's motion for summary judgment. (ECF No. 29.) For the reasons outlined below, the undersigned respectfully recommends that defendant Miranda's motion be granted and that judgment be entered in favor of defendant Miranda.

////

////

---

[1] Plaintiff's complaint and the docket sheet refer to this defendant as "Rimanda." (See ECF No. 1.) However, this defendant's own motion refers to him as "Miranda." (See ECF No. 29.) Accordingly, the court shall refer to him as defendant Miranda.

1

I.      **Background**

   A.      **Procedural**

Plaintiff is currently proceeding on his original complaint against defendant Miranda, as well as five other staff members at High Desert State Prison (HDSP). (ECF No. 1.) Defendant Miranda filed a motion for summary judgment. (ECF No. 29.) The remaining defendants filed for summary judgment separately. (ECF No. 30.) The court will address the other defendants' motion by way of a separate findings and recommendations. Plaintiff opposes defendant Miranda's motion. (ECF No. 44.) Defendant Miranda filed a reply in support of his motion. (ECF No. 46.) The summary judgment motion is now ripe for review.

   B.      **Factual**

The below statement of facts is derived from the parties' statements of undisputed facts, oppositions to the statements of undisputed facts, the allegations in plaintiff's complaint, and the declarations, depositions and other records submitted for the court's consideration on this summary judgment motion. (ECF Nos. 29-2; 29-3; 29-4; 44-1; 44-2; 46-1.) The following facts are undisputed by the parties or, following the court's review, have been deemed undisputed for purposes of the pending motion.

On several occasions in his response to the undisputed statement of material facts, plaintiff asserts that a certain fact is disputed, but, in his explanation, does not actually dispute the fact. For instance, in defendant Miranda's statement of undisputed facts, he asserts that he "reviewed plaintiff's medical records to look for evidence that plaintiff suffered from either asthma or a wool allergy, but he found no indication in the records that plaintiff met the criteria for a cotton bedding accommodation." (ECF No. 29-2 at 3.) Plaintiff asserts that this fact is disputed, but his dispute merely alleges that defendant Miranda "failed his obligatory duty to assure that plaintiff received his cotton beeding [sic] accommodation when he reviewed plaintiff's medical file and [did] not diuscover [sic] the 7410 chrono for cotton bedding approval." (ECF No. 44-1 at 4.) That defendant Miranda reviewed the medical file and found no evidence of plaintiff suffering from a wool allergy or asthma is not actually disputed.

////

The court has reviewed plaintiff's statement of undisputed facts and his objections to defendants' statement of facts in detail. (ECF No. 44-1.) Where it is clear that plaintiff's "dispute" with a stated fact is merely an elaboration on the fact, the court will accept that the initial fact stated by defendant Miranda is undisputed. The court will, of course, consider plaintiff's elaborations and explanations as far as they are supported by evidence, actually undisputed, and relevant.

Plaintiff arrived in the Receiving and Release Unit (R&R) at HDSP from Corcoran State Prison (Corcoran) on December 11, 2012. Plaintiff was temporarily transferred to HDSP for an appearance at a settlement conference in a separate action against HDSP staff. Every inmate who arrives at HDSP is examined by a primary care provider, who determines whether any accommodations indicated on an inmate's accommodation "chrono" should be continued. As a Physician's Assistant, defendant Miranda has the authority to change or discontinue an inmate's chrono accommodations based upon his evaluation of an inmate. Chapter 23 of Title 15, entitled "Comprehensive Accommodation Chrono," explicitly sets forth the criteria that qualifies an inmate for any given medical accommodation. Defendant Miranda is not authorized to give an inmate an accommodation for which he does not qualify under the criteria set forth in Title 15.

When plaintiff arrived in the R&R on December 11, 2012, defendant Miranda reviewed the medical documents contained in the folder that was sent from plaintiff's sending institution, as well as medical records that defendant Miranda could access through the electronic Unit Health Records system. Defendant Miranda and registered nurse Kesler[2] both asked plaintiff questions about his health and medical history. Plaintiff's most recent chrono, dated October 15, 2012, included accommodations for a lower bunk, orthotic shoes with custom insoles, cotton bedding, waist chains, physical limitations such as walking no more than one quarter of a mile, and no climbing.

////

---

[2] Registered nurse Kesler is also named as a defendant in this action. (See ECF No. 1.) However, as noted above, the remaining defendants are separately represented and filed for summary judgment in a separate motion.

3

1    Upon reviewing plaintiff's medical records, defendant Miranda determined that plaintiff
2    may qualify for orthotic shoes with custom insoles under the criteria set forth in Title 15.
3    Plaintiff was wearing tennis shoes with fitted orthotic insoles rather than orthotic shoes when he
4    arrived at HDSP.  Plaintiff told defendant Miranda that he could walk in his tennis shoes without
5    pain during his temporary stay at HDSP.  Defendant Miranda discontinued plaintiff's
6    accommodation for orthotic shoes with custom insoles because plaintiff had left the shoes at his
7    previous institution.  Although plaintiff did not consent to defendant Miranda rescinding his
8    accommodation chrono, plaintiff stated that he could walk in his tennis shoes without pain during
9    his brief stay at HDSP.  When plaintiff was returned to Corcoran, he was again able to access his
10   orthotic shoes with custom insoles.
11   Pursuant to Title 15, an inmate only qualifies for a cotton bedding accommodation if he
12   has a history of asthma or a wool allergy.  Defendant Miranda reviewed plaintiff's medical
13   records to look for medical evidence that plaintiff suffered from either asthma or a wool allergy,
14   but he found no indication in the records that plaintiff met the criteria for a cotton bedding
15   accommodation.  Plaintiff received non-wool bedding to which he was not allergic while he was
16   at HDSP and upon his return to Corcoran.  Plaintiff did not suffer physical harm as a result of the
17   decision to discontinue the chrono for cotton bedding.
18   Under Title 15, an inmate may qualify for a lower bunk accommodation if he has severe
19   orthopedic conditions of the hips, knees, ankles, feet, or upper extremity that physically prevent
20   or make it unduly painful or dangerous for the inmate to climb to an upper bunk.  Defendant
21   Miranda knew that the cells to which plaintiff would be assigned at HDSP were outfitted with a
22   stool and desk that created a type of staircase that enabled an inmate to access a top bunk.  In
23   defendant Miranda's opinion, this "staircase" would not require any pulling on behalf of the
24   inmate that would aggravate shoulder or back pain.  Defendant Miranda and registered nurse
25   Kesler asked plaintiff questions about his shoulder and whether he was experiencing any pain.
26   Defendant Miranda reviewed plaintiff's medical records to look for medical evidence that
27   plaintiff had any acute orthopedic conditions that would qualify him for a lower bunk
28   accommodation.  Defendant Miranda determined that plaintiff did not suffer from any acute

4

1   orthopedic conditions that would qualify him for a lower bunk accommodation while he was
2   housed at HDSP.
3         While at HDSP, plaintiff was the sole inmate assigned to his cell at all times and so was
4   able to always use the lower bunk.  Accordingly, plaintiff did not suffer any physical injury
5   directly from the discontinuation of the lower bunk accommodation chrono.
6         Under Title 15, an inmate may be entitled to a cuffing accommodation if the inmate
7   cannot be safely cuffed behind his back due to "a significant musculoskeletal condition."
8   Typically an inmate only qualifies for a cuffing accommodation when the inmate has suffered a
9   recent rotator cuff tear or recently undergone an invasive shoulder surgery.  Defendant Miranda
10  reviewed plaintiff's medical records to look for medical evidence that plaintiff suffered from a
11  significant musculoskeletal condition that would qualify him for a cuffing accommodation.
12  Defendant Miranda determined that plaintiff did not suffer from any significant musculoskeletal
13  conditions that would qualify him for a cuffing accommodation.
14        On the evening of December 11, 2012, after plaintiff had been pepper-sprayed by
15  defendant Gustafson,[3] plaintiff overheard the voices of defendant Miranda and registered nurse
16  Kesler who were out of his line of sight.  From his holding cell, plaintiff pleaded for medical
17  assistance, but defendant Miranda did not hear him.
18        When plaintiff returned to Corcoran, Dr. Khin Aye reinstated plaintiff's accommodations
19  for a lower bunk, orthotic shoes with custom insoles, cotton bedding, and no back cuffing on
20  January 15, 2013.  However, Dr. Khin Aye could not find documentation indicating the need for a
21  cuffing accommodation, nor could he find wool test results in plaintiff's medical records that
22  would indicate that plaintiff needed a cotton bedding accommodation.  On January 17, 2013, the
23  Chief Medical Officer at Corcoran denied plaintiff's cuffing accommodation because there was
24  "no medical indication" that such an accommodation was medically necessary.
25  ////
26
27  [3] The pepper-spraying by defendant Gustafson is the subject of a separate claim, which shall be addressed by the court in a separate findings and recommendations concerning the remaining
28  defendants' motion for summary judgment.

5

## II.     Legal Standard for Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. Crawford–El v. Britton, 523 U.S. 574, 600 (1998); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986); Nw. Motorcycle Ass'n v. U.S. Dep't of Agric., 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. Celotex Cop. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323; Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248; Auvil v. CBS "60 Minutes", 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. See e.g., Lujan v. National Wildlife Fed'n, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters

1  which demonstrate the absence of a genuine material factual issue.  See Celotex, 477 U.S. at 323-
2  24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a
3  summary judgment motion may properly be made in reliance solely on the 'pleadings,
4  depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment
5  should be entered, after adequate time for discovery and upon motion, against a party who fails to
6  make a showing sufficient to establish the existence of an element essential to that party's case,
7  and on which that party will bear the burden of proof at trial.  See id. at 322.  In such a
8  circumstance, summary judgment must be granted, "so long as whatever is before the district
9  court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

10  To defeat summary judgment the opposing party must establish a genuine dispute as to a
11  material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that
12  is material, i.e., one that makes a difference in the outcome of the case.  Anderson, 477 U.S. at
13  248 ("Only disputes over facts that might affect the outcome of the suit under the governing law
14  will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is
15  determined by the substantive law applicable for the claim in question.  Id.  If the opposing party
16  is unable to produce evidence sufficient to establish a required element of its claim that party fails
17  in opposing summary judgment.  "[A] complete failure of proof concerning an essential element
18  of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S.
19  at 322.

20  Second, the dispute must be genuine.  In determining whether a factual dispute is genuine
21  the court must again focus on which party bears the burden of proof on the factual issue in
22  question.  Where the party opposing summary judgment would bear the burden of proof at trial on
23  the factual issue in dispute, that party must produce evidence sufficient to support its factual
24  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.
25  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit
26  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue
27  for trial.  Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.  More significantly, to
28  demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

1   that a fair-minded jury "could return a verdict for [him] on the evidence presented." Anderson,
2   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

3   The court does not determine witness credibility.  It believes the opposing party's
4   evidence, and draws inferences most favorably for the opposing party.  See id. at 249, 255;
5   Matsushita, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the
6   proponent must adduce evidence of a factual predicate from which to draw inferences.  American
7   Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,
8   dissenting) (citing Celotex, 477 U.S. at 322).  If reasonable minds could differ on material facts at
9   issue, summary judgment is inappropriate.  See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th
10  Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier
11  of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S.
12  at 587 (citation omitted); Celotex, 477 U.S. at 323 (if the evidence presented and any reasonable
13  inferences that might be drawn from it could not support a judgment in favor of the opposing
14  party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any genuine
15  dispute over an issue that is determinative of the outcome of the case.

16  Defendants' motion for summary judgment included a so-called "Rand notice" (ECF No.
17  84-2) to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of
18  the Federal Rules of Civil Procedure.  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v.
19  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999);
20  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

21  **III.   Legal Analysis**

22  Defendant Miranda moves for summary judgment on the grounds that: (1) Defendant
23  Miranda was not deliberately indifferent to plaintiff's serious medical needs; (2) Plaintiff did not
24  sustain an injury that can be attributed to defendant Miranda's conduct; and (3) Defendant
25  Miranda is entitled to qualified immunity.  (ECF No. 29-1.)  As outlined below, the undersigned
26  recommends that defendant Miranda's motion be granted because defendant Miranda was not
27  deliberately indifferent to plaintiff's medical needs, nor did plaintiff sustain an injury that can be
28  ////

attributed to defendant Miranda. Because the court recommends ruling in defendant Miranda's favor on these grounds, the undersigned need not reach the qualified immunity issue.

### A. Legal Standard for Deliberate Indifference to Serious Medical Needs

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting Estelle, 429 U.S. at 104). Serious medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; [and] the existence of chronic and substantial pain." McGuckin, 974 F.2d at 1059-60.

To prevail on a claim for deliberate indifference to serious medical needs, a prisoner must demonstrate that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of

9

pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

"The indifference to a prisoner's medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this claim.  Even gross negligence is insufficient to establish deliberate indifference to serious medical needs." Lemire, 726 F.3d at 1081-82 (internal citations, punctuation and quotation marks omitted); accord, Cano v. Taylor, 739 F.3d 1214, 1217 (9th Cir. 2014).  Moreover, "[a] difference of opinion between a physician and the prisoner -- or between medical professionals -- concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989)).

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact.  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by virtue of their having turned a blind eye to facts or inferences strongly suspected to be true[.]" Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

When the risk is not obvious, the requisite knowledge may still be inferred by evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Farmer, 511 U.S. at 842.  On the other hand, prison officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise

was insubstantial or nonexistent." Id. at 844. Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances. Id. at 844-45; see also Wilson v. Seiter, 501 U.S. 294, 298 (1991); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

### B. Discontinuation of Accommodations

Plaintiff alleges that defendant Miranda was indifferent to his medical needs by discontinuing his prior accommodations for orthotic shoes with custom insoles, a lower bunk, cotton bedding, and waist restraints. Plaintiff claims that defendant Miranda's decision to discontinue the four medical accommodations was based upon reasons other than the actual medical record. (ECF No. 1 at 6-7.) Specifically, plaintiff alleges that defendant Gustafson -- a correctional officer with a purported grudge because of plaintiff's history of filing lawsuits against prison guards -- suggested that defendant Miranda discontinue the accommodations. (Id.)

Plaintiff states that when he arrived at R&R, he first discussed his medical chronos with nurse Kesler. (ECF No. 29-4 at 14.) Plaintiff claims that he discussed his various ailments and accommodations with nurse Kesler, and then defendant Miranda interjected to state that HDSP would not honor plaintiff's chronos. (Id. at 17.) Plaintiff does not dispute that prior to discontinuing these specific accommodations, defendant Miranda reviewed plaintiff's most recent chrono, primary care progress notes, problem list/record flow form, and his only x-ray on the record from the past year. (ECF Nos. 29-3 at 3-4; 44-1 at 2).

Additionally, it is undisputed that nurse Kesler and defendant Miranda interviewed plaintiff and asked him questions about his medical conditions. (ECF Nos. 29-3 at 4; 29-4 at 15-17.) Plaintiff alleges that neither nurse Kesler, nor defendant Miranda performed a physical exam of plaintiff. (ECF No. 1 at 5.) Defendant Miranda claims that he performed a brief physical exam on plaintiff as part of the interview process, in order to assess plaintiff's shoulder concerning the lower bunk accommodation. (ECF No. 29-3 at 4-5.) It is not contested that nurse Kesler checked plaintiff's vitals at the outset of the interview, measuring his temperature, pulse, respiration rate, and blood pressure. (Id. at 4.)

////

1    The undersigned will assess each of the discontinued accommodations in turn below. For the reasons outlined below in the assessments, the court recommends granting summary judgment for defendant Miranda.

### 1. Lower Bunk Accommodation

First, the court will address the lower bunk accommodation. In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a "serious medical need" by demonstrating that "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Jett, 439 F.3d at 1096 (internal citations omitted). Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. Id. "This second prong—defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) **harm** caused by the indifference." Id. (emphasis supplied). Plaintiff in this matter was not harmed by the discontinuation of his lower bunk accommodation at HDSP.

It is uncontested that plaintiff was not assigned a cellmate during his entire stay at HDSP. (ECF No. 29-4 at 45.) As plaintiff admitted during his deposition, he had the lower bunk during his entire stay at HDSP. (Id.) Upon his return to Corcoran, plaintiff was also the sole occupant of his cell and had access to the lower bunk. Thus, even if this court were to determine that defendant Miranda purposefully failed to address plaintiff's serious medical need of a lower bunk accommodation, plaintiff is unable to show any harm because he was never denied access to a lower bunk while at HDSP. Thus, defendant Miranda should prevail concerning this claim.

### 2. Cotton Bedding Accommodation

As with the lower bunk accommodation, plaintiff also shows no harm resulting from the discontinuation of the cotton bedding accommodation while he was at HDSP. While the medical chrono was adjusted by defendant Miranda, plaintiff was still provided with cotton bedding, or at least bedding that was not wool and that did not give him an allergic reaction. (Id. at 46.) Furthermore, despite the changed chrono, plaintiff still had access to cotton bedding when he returned to Corcoran. (Id. at 47.)

12

Thus, plaintiff has failed to demonstrate any harm that resulted from the change to his cotton bedding accommodation. Accordingly, defendant Miranda should prevail concerning this claim.

### 3. Orthotic Shoes Accommodation

As with the above two claims, plaintiff has failed to establish that the change to his medical chrono by defendant Miranda concerning his use of orthotic shoes resulted in any harm. During plaintiff's entire stay at HDSP, he had access to his shoes with orthotic inserts. (Id. at 45.) The only "harm" that plaintiff alleges concerning this accommodation is that when he returned to Corcoran, he had to file an inmate grievance to get the accommodation reinstated. (Id. at 46-47).

However, despite having to file a grievance, plaintiff was immediately able to access his orthotic shoes with custom insoles again at Corcoran even without the chrono. (Id. at 47.) Thus, plaintiff has not established that defendant Miranda's discontinuation of the medical accommodation resulted in any harm to plaintiff. Accordingly, defendant Miranda should prevail concerning this claim.

### 4. Cuffing Accommodation

The only discontinued medical accommodation that arguably led to plaintiff suffering physical harm was the cuffing accommodation, as the other defendants cuffed plaintiff behind his back during the alleged excessive force incident. Thus, plaintiff has shown facts that could be interpreted as demonstrating harm concerning this accommodation. However, plaintiff has not established that defendant Miranda's decision to discontinue this accommodation was deliberately indifferent to his medical needs.

To qualify for alternative cuffing, there must be evidence of a musculoskeletal condition that prevents an inmate from safely cuffing behind his back. (ECF No. 29-3 at 13.) The basis for plaintiff's cuffing accommodation that was provided at Corcoran (both before and after his stay at HDSP) was an "old" shoulder injury from years before. (Id. at 19, 24.) When the accommodation was reinstated on January 15, 2013, after plaintiff returned to Corcoran, the physician who reinstated it noted that there was no documentation in plaintiff's chart concerning his shoulder injury and that the reinstatement of this chrono was "questionable." (Id. at 24.)

While medical staff at Corcoran found plaintiff qualified for a cuffing accommodation that does not mean that defendant Miranda was required to reach the same conclusion. A difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989). Likewise, a disagreement between plaintiff and defendants as to how defendants provided him with medical care fails to state a cognizable section 1983 claim. Id.; see also Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctor[] chose was medically unacceptable under the circumstances" and "that [the doctor] chose this course in conscious disregard of an excessive risk to [the prisoner's] health." Jackson, 90 F.3d at 332. The uncontroverted evidence on the record establishes that defendant Miranda's decision was not deliberately indifferent.

To determine whether plaintiff qualified for this accommodation, defendant Miranda reviewed plaintiff's medical records to look for medical evidence that plaintiff suffered from a significant musculoskeletal condition. The records that defendant Miranda reviewed included most recent chrono, dated October 15, 2012, a recent Primary Provider Progress Note and Problem List/Record Flow form, both dated July 25, 2012, and an interpretation of a lumbar X-ray dated January 12, 2012. (ECF No. 29-3 at 4.) Additionally, defendant Miranda and nurse Kesler asked plaintiff questions about his health and medical history. (Id.) Based upon this review, defendant Miranda determined that a cuffing accommodation was no longer necessary. Plaintiff's claims to the contrary amount to second guessing of a medical opinion.

Where defendant Miranda's opinion differs from that of the medical staff at Corcoran, plaintiff must show that defendant Miranda's course of treatment was "medically unacceptable." Jackson, 90 F.3d at 332. The record here does not support that conclusion.

The Primary Care Provider Note on which plaintiff's October 12, 2012 medical chrono was based merely states that plaintiff has "old [right] shoulder pain" and an "old injury." There is no documentation supporting the extent of the injury and the amount of the pain. The

14

1  uncontested facts indicate that the shoulder injury was discussed during plaintiff's medical
2  interview with nurse Kesler and defendant Miranda. (ECF No. 44-1 at 6.) Defendant Miranda
3  and nurse Kesler asked questions about the shoulder and whether plaintiff was experiencing pain.
4  (Id.)  Based upon this medical interview and plaintiff's medical record, defendant Miranda
5  discontinued the cuffing accommodation, finding no significant musculoskeletal conditions that
6  would require this accommodation. (ECF No. 29-3 at 6-7.)

7  As noted above, the physician who reinstated this specific medical accommodation when
8  plaintiff returned to Corcoran noted that it was "questionable." (Id. at 24.) Additionally, that
9  physician noted the absence of documentation in plaintiff's record to support the claim of a
10 shoulder injury on which the chrono was based. (Id.) Thus, defendant Miranda's conclusion that
11 the record did not support the chrono is in accord with the Corcoran medical staff. Furthermore,
12 the Corcoran medical staff indicated that this accommodation may not even be necessary by
13 labeling it as "questionable." (Id.)

14 Defendant Miranda's decision to rescind this chrono was rooted in the absence of
15 documentary evidence in plaintiff's record and plaintiff's responses to his medical inquiries. The
16 decision was also a close call according to other physicians who examined plaintiff. Mere
17 "indifference," "negligence," or "medical malpractice" will not establish deliberate indifference
18 to serious medical needs. Lemire, 726 F.3d at 1081-82. Additionally, mere disagreement
19 between medical professionals is legally insufficient to establish deliberate indifference. See
20 Toguchi, 391 F.3d at 1058. Plaintiff's allegations concerning defendant Miranda's
21 discontinuation of this accommodation merely amounts to second guessing his medical opinion,
22 which cannot establish a deliberate indifference claim.

23 Accordingly, defendant Miranda should prevail concerning this claim.

24 **C.     Plaintiff's Calls for Help**

25 In addition to discontinuing his medical accommodations, plaintiff also alleges that
26 defendant Miranda ignored his calls for medical assistance after the alleged excessive force
27 incident, which is the subject of the claims against the other defendants in this case. Specifically,
28 plaintiff alleges that the other defendants in this action sprayed him with pepper spray through a

cell door, dragged him out of the cell, pushed him into a wall, twisted his arms, put him in an excessively hot shower, handcuffed him behind his back, and then placed him back in a holding cell. (ECF No. 1 at 8-10.)  While in the holding cell, plaintiff claims that he could hear the voices defendant Miranda and nurse Kesler in the distance, but that they did not come to his assistance when he pleaded for emergency medical help after the alleged excessive force incident. (Id. at 10.)

At the time that plaintiff states that he called for help, he could not see defendant Miranda or nurse Kesler because of the pepper spray in his eyes. (Id.)  Additionally, plaintiff's complaint states that defendant Miranda and nurse Kesler were "a far distance" away in the R&R medical unit while plaintiff was in holding cage number 2. (Id.)  During his deposition, plaintiff stated that defendant Miranda and nurse Kesler were "a room or two away" from him when he called out for medical help. (ECF No. 29-4 at 35-36.)  Defendant Miranda, in his sworn declaration, states that following the examination where he discontinued plaintiff's medical accommodations, he "never again examined [plaintiff] or otherwise interacted with him.  I never heard [plaintiff] call out for medical assistance on the night of December 11, 2012." (ECF No. 29-3 at 7.)

It is undisputed that defendant Miranda did not hear plaintiff's calls for medical assistance.  While plaintiff states he called out for help, there is no evidence on the record that defendant Miranda should have or actually did hear these pleas.  It is uncontested that defendant Miranda was not in the same room as plaintiff when he called for assistance and defendant Miranda has sworn to the fact that he did not hear plaintiff that evening. (ECF Nos. 29-4 at 7; 29-4 at 35-36.)  Even if the court were to make the leap and infer that defendant Miranda **should have** heard plaintiff's calls for help, "an official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot . . . be condemned as the infliction of punishment" under the Eighth Amendment.  Farmer, 511 U.S. at 838.

Accordingly, because the uncontroverted evidence establishes that defendant Miranda did not hear plaintiff call for help on the evening of December 11, 2012, the court should grant summary judgment for defendant Miranda concerning this portion of the Eighth Amendment claim.

## IV. Conclusion

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendant Miranda's motion for summary judgment (ECF No. 29) be granted; and
2. Summary judgment be granted in full on behalf of defendant Miranda.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 6, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

TIM-DLB:10
DB / ORDERS / ORDERS.PRISONER.CIVIL RIGHTS / wash.0628.msj1