UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JESSE WASHINGTON,

          Plaintiff,

    v.

ANDREW GUSTAFSON, et al.,

          Defendants.

No.  2:14-cv-0628 TLN DB P

FINDINGS AND RECOMMENDATIONS

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983 alleging defendants used excessive force against him and were deliberately indifferent to his serious medical needs by rescinding medical accommodations and not providing prompt medical care after the alleged excessive force incident.  Before the court is defendants Aguilera, Blomquist, Gustafson, Kesler, and Walker's motion for summary judgment. (ECF No. 30.)  For the reasons outlined below, the undersigned respectfully recommends that defendants' motion be granted in part and denied in part.

I.    **Background**

    A.    **Procedural**

Plaintiff is currently proceeding on his original complaint against defendants.  (ECF No. 1.)  At the screening stage, then-Magistrate Judge Dale A. Drozd found the following potentially cognizable claims:

1

(1)     That defendants Kesler and Miranda were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment when they rescinded his medical chrono and when they ignored his requests for medical attention after he was sprayed with oleoresin capsicum and handcuffed behind his back;

(2)     That defendant Gustafson used excessive force in violation of the Eighth Amendment and retaliated against plaintiff for his exercise of First Amendment rights when he intentionally sprayed oleoresin capsicum in plaintiff's face;

(3)     That defendant Gustafson used excessive force in violation of the Eighth Amendment, retaliated against plaintiff for his exercise of his First Amendment rights, and was deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment when he handcuffed plaintiff behind his back rather than use waist restraints as authorized by plaintiff's prison chrono; and

(4)     That defendants Gustafson, Walker, Blomquist, and Aguilera were deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment when they ignored his requests for medical attention after he was sprayed with oleoresin capsicum and handcuffed behind his back.  (ECF No. 6 at 5-6.)

Defendants Aguilera, Blomquist, Gustafson, Kesler, and Walker filed a motion for summary judgment.  (ECF No. 30.)  Plaintiff opposes defendants' motion.  (ECF Nos. 39; 41.)  Defendants filed a reply in support of his motion.  (ECF No. 42.)  The summary judgment motion is now ripe for review.

Defendant Miranda individually moved for summary judgment.  (ECF No. 29.)  The court issued a separate findings and recommendations concerning defendant Miranda's motion.  (ECF No. 52.)

**B.     <u>Factual</u>**

The below statement of facts is derived from the parties' statements of undisputed facts, oppositions to the statements of undisputed facts, the allegations in plaintiff's complaint, and the declarations, depositions and other records submitted for the court's consideration.  (ECF Nos. 1; 29-2; 29-3; 29-4; 30-2; 30-4; 30-5; 30-6; 30-7; 30-8; 30-9; 30-10; 30-11; 30-12; 30-13; 37; 38;

1   39; 43; 44-1; 44-2; 46-1.)[1]

2       On several occasions in his response to the undisputed statement of material facts,

3   plaintiff asserts that a certain fact is disputed, but, in his explanation, does not actually dispute the

4   fact.  For instance, in defendants' statement of undisputed facts, they assert that defendant "Kesler

5   did not rescind Plaintiff's accommodation chronos."  (ECF No. 30-2 at 2.)  Plaintiff contends that

6   this fact is disputed, but his dispute merely alleges that defendant Kesler conversed with

7   defendant Miranda[2] and defendant Gustafson concerning the chronos and that defendant Kesler

8   should have intervened to stop others from rescinding the chronos.  (ECF No. 38 at 3.)  That

9   defendant Kesler did not rescind the accommodation chronos is not actually disputed.

10      The court has reviewed plaintiff's statement of undisputed facts and his objections to

11  defendants' statement of facts in detail.  (ECF No. 38.)  Where it is clear that plaintiff's "dispute"

12  with a stated fact is merely an elaboration on the fact, the court will accept that the initial fact

13  stated by defendants is undisputed.  The court will, of course, consider plaintiff's elaborations and

14  explanations, as far as they are supported by evidence, actually undisputed, and relevant.

15      Plaintiff arrived in the Receiving and Release Unit (R&R) at High Desert State Prison

16  (HDSP) from Corcoran State Prison (Corcoran) on December 11, 2012.  Plaintiff was temporarily

17  transferred to HDSP for an appearance at a settlement conference in a separate action against

18  HDSP staff.

19      Defendant Kesler was a Registered Nurse licensed by the State of California.  Defendant

20  Kesler was employed by California Department of Corrections and Rehabilitation (CDCR) at all

21  relevant times.  Defendants Gustafson, Walker, Blomquist, and Aguilera were employed by

22  CDCR at HDSP as a Correctional Officers during the relevant time.

23  _____

24  [1]  The court is taking into consideration some relevant undisputed facts that were established in
    the findings and recommendations concerning defendant Miranda's separate motion for summary

25  judgment.  (ECF No. 52.)  In particular, the court is adopting factual findings concerning the
    medical intake process in the R&R of HDSP, which are relevant to the deliberate indifference

26  claim against defendant Kesler arising from the rescinding of plaintiff's medical
    accommodations.

27
28  [2]  Plaintiff's complaint and other filings in this case erroneously name defendant Miranda as
    "Rimanda."  The court will refer to this defendant throughout as "Miranda."

### 1.    R&R Intake at HDSP

Upon plaintiff's arrival in the R&R, defendant Kesler provided Plaintiff 50mg tablets of Indomethacin, conducted an intake interview with plaintiff, and documented his effective communication with plaintiff.  Defendant Kesler noted Plaintiff had a comprehensive accommodation chrono dated October 22, 2012, for lower bunk, waist chains, orthopedic shoes, cotton bedding, and no walking over one quarter of a mile.

Every inmate who arrives at HDSP is examined by a primary care provider, who determines whether any accommodations indicated on an inmate's accommodation "chrono" should be continued.  Registered nurses do not have authority to grant, alter, or rescind accommodation chronos.  Those duties are reserved from primary care providers, such as medical doctors, nurse practitioners, and physician's assistants.

As a Physician's Assistant, Certified, defendant Miranda has the authority to change or discontinue an inmate's chrono accommodations based upon his evaluation of an inmate. Chapter 23 of Title 15, entitled "Comprehensive Accommodation Chrono," explicitly sets forth the criteria that qualifies an inmate for any given medical accommodation.  Defendant Miranda is not authorized to give an inmate an accommodation for which he does not qualify under the criteria set forth in Title 15.

When plaintiff arrived in the R&R on December 11, 2012, defendant Miranda reviewed the medical documents contained in the folder that was sent from plaintiff's sending institution, as well as medical records that defendant Miranda could access through the electronic Unit Health Records system.  Defendant Miranda and registered nurse Kesler both asked plaintiff questions about his health and medical history.

Upon reviewing plaintiff's medical records, defendant Miranda determined that plaintiff may qualify for orthotic shoes with custom insoles under the criteria set forth in Title 15. Plaintiff was wearing tennis shoes with fitted orthotic insoles rather than orthotic shoes when he arrived at HDSP.  Plaintiff told defendant Miranda that he could walk in his tennis shoes without pain during his temporary stay at HDSP.  Defendant Miranda discontinued plaintiff's accommodation for orthotic shoes with custom insoles because plaintiff had left the shoes at his

4

1    previous institution.  Although plaintiff did not consent to defendant Miranda rescinding his

2    accommodation chrono, plaintiff stated that he could walk in his tennis shoes without pain during

3    his brief stay at HDSP.  When plaintiff was returned to Corcoran, he was again able to access his

4    orthotic shoes with custom insoles.

5        Pursuant to Title 15, an inmate only qualifies for a cotton bedding accommodation if he

6    has a history of asthma or a wool allergy.  Defendant Miranda reviewed plaintiff's medical

7    records to look for medical evidence that plaintiff suffered from either asthma or a wool allergy,

8    but he found no indication in the records that plaintiff met the criteria for a cotton bedding

9    accommodation.  Plaintiff received non-wool bedding to which he was not allergic while he was

10   at HDSP and upon his return to Corcoran.  Plaintiff did not suffer physical harm as a result of the

11   decision to discontinue the chrono for cotton bedding.

12       Under Title 15, an inmate may qualify for a lower bunk accommodation if he has severe

13   orthopedic conditions of the hips, knees, ankles, feet, or upper extremity that physically prevent

14   or make it unduly painful or dangerous for the inmate to climb to an upper bunk.  Defendant

15   Miranda knew that the cells to which plaintiff would be assigned at HDSP were outfitted with a

16   stool and desk that created a type of staircase that enabled an inmate to access a top bunk.  In

17   defendant Miranda's opinion, this "staircase" would not require any pulling on behalf of the

18   inmate that would aggravate shoulder or back pain.  Defendant Miranda and registered nurse

19   Kesler asked plaintiff questions about his shoulder and whether he was experiencing any pain.

20   Defendant Miranda reviewed plaintiff's medical records to look for medical evidence that

21   plaintiff had any acute orthopedic conditions that would qualify him for a lower bunk

22   accommodation.  Defendant Miranda determined that plaintiff did not suffer from any acute

23   orthopedic conditions that would qualify him for a lower bunk accommodation while he was

24   housed at HDSP.

25       While at HDSP, plaintiff was the sole inmate assigned to his cell at all times and so was

26   able to always use the lower bunk.  Accordingly, plaintiff did not suffer any physical injury

27   directly from the discontinuation of the lower bunk accommodation chrono.

28   ////

Under Title 15, an inmate may be entitled to a cuffing accommodation if the inmate cannot be safely cuffed behind his back due to "a significant musculoskeletal condition." Typically an inmate only qualifies for a cuffing accommodation when the inmate has suffered a recent rotator cuff tear or recently undergone an invasive shoulder surgery.  Defendant Miranda reviewed plaintiff's medical records to look for medical evidence that plaintiff suffered from a significant musculoskeletal condition that would qualify him for a cuffing accommodation. Defendant Miranda determined that plaintiff did not suffer from any significant musculoskeletal conditions that would qualify him for a cuffing accommodation.

Defendant Kesler did not rescind plaintiff's medical accommodation chronos.

### 2.      Defendant Gustafson's Use of Force

After the medical processing, plaintiff was escorted to and secured in Holding Tank #4, where he waited for an assignment to a more permanent cell.  At some point after plaintiff's medical evaluation, defendant Gustafson learned that plaintiff's accommodation chronos, including for his waist chains, were determined to be medically unnecessary.

At around 8:50 PM, defendant Gustafson approached plaintiff's holding tank, and, with the entrance closed, activated a MK4 oleoresin capsicum (OC) spray can, and discharged a burst toward plaintiff's facial area, through the bars of the holding tank from approximately two or three feet away.  The parties dispute what prompted the incident.[3]

Defendant Gustafson then ordered Plaintiff to "get down" and he complied.  Defendant Gustafson then called for a Code 1 alarm using his institution radio.  Plaintiff was then handcuffed behind his back by correctional officers, including defendants Blomquist, and Walker. The parties dispute whether defendants Gustafson and Aguilera participated in the handcuffing of plaintiff.  Plaintiff admits that he could not see who actually applied the handcuffs though.

### 3.      Plaintiff's Escort and Decontamination

Once handcuffed, plaintiff was escorted to Holding Tank #5, which had a shower head, so that plaintiff could rinse off the OC spray.  A correctional officer turned on the water and plaintiff

---

[3] The parties dispute as to what, if anything prompted the incident is discussed in the legal analysis of Defendant Gustafson's use of the OC spray.

1    rinsed off for between five seconds and five minutes.  The parties dispute the water temperature

2    and whether plaintiff perceived the water as too hot to wash off the OC spray.

3           Defendant Kesler filled out a "Medical Report of Injury or Unusual Occurrence" after the

4    use of force.  (ECF No. 30-13 at 3.)  The form indicates that defendant Kesler was notified of the

5    use of force at 8:58 PM on December 11, 2012 and that he responded to plaintiff at 9:00 PM on

6    December 11, 2012.  (Id.)  The form states that defendant Kesler observed plaintiff's face after

7    his exposure to the OC spray, and that defendant Kesler determined that no injury was found as a

8    result of the spray.  (Id.)  The form is dated as having been completed at 10:00 PM on December

9    11, 2012.  (Id.)

10          Plaintiff claims that this document was fabricated.  (ECF No. 38 at 11.)  Plaintiff supports

11   this contention with his declaration, which asserts that he never received medical attention after

12   the use of force despite his pleas to the correctional officers.  (ECF No. 37 at 8-9.)

13          Where opposing parties tell two different stories, one of which is "blatantly contradicted"

14   by the record so that no reasonable jury could believe it, the court should not adopt that version of

15   the facts.  Scott v. Harris, 550 U.S. 372, 380 (2007).  Plaintiff's contention that defendant

16   Kesler's medical report is fabricated is not blatantly contradicted by the record.  Accordingly, the

17   "Medical Report of Injury or Unusual Occurrence" dated December 11, 2012 is not determinative

18   that plaintiff received medical treatment after the use of force for the following reasons.

19           "When the non-moving party relies on its own affidavits to oppose summary judgment, it

20   cannot rely on conclusory allegations unsupported by factual data to create an issue of material

21   fact."  Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993).  In Hansen, the plaintiffs

22   contended there was a genuine issue of material fact as to whether the government sent a

23   particular notice to them or not.  While the government presented computer-generated public

24   records showing that the notice had been sent, the plaintiffs merely submitted an affidavit that

25   they had not received the notice.  Hansen, 7 F.3d at 138.  The court found that the plaintiffs'

26   affidavit was insufficient to establish a genuine issue of material fact because it only went to

27   whether the plaintiffs' received the notice, not to whether the notice was actually sent.  Id.  Thus,

28   there was no evidence presented to dispute that the government had ever sent the notice.  Id.

1   Here, plaintiff supports his allegation that defendant Kesler fabricated the medical report

2   form with an affidavit stating that defendant Kesler never evaluated him after the use of force

3   incident.  (ECF Nos. 37 at 8-9; 38 at 11.)  Unlike the affidavit in Hansen, plaintiff's declaration in

4   this case goes to the core concern regarding the document at issue: whether defendant Kesler

5   actually saw and assessed plaintiff after the incident.  Because plaintiff's declaration raises an

6   issue of fact as to whether defendant Kesler ever evaluated plaintiff's injuries from the use of

7   force, there is an issue of fact as to whether "Medical Report of Injury or Unusual Occurrence" is

8   an accurate representation of defendant Kesler's actions.

9   Furthermore, in United States v. 1 Parcel of Real Property, Lot 4, Block 5 of Eaton Acres

10   ("Eaton Acres"), which the Ninth Circuit relied upon to establish the statement of law in Hansen,

11   the court unequivocally stated that it could not "reject claimant's evidence simply because it

12   consists entirely of the [claimant's] self-serving testimony."  904 F.2d 487 (9th Cir. 1990).

13   There, the claimant "offered a detailed declaration painting a picture entirely different from that

14   described by the government."  Id.  And while the Ninth Circuit found the evidence to be "hardly

15   overwhelming," it nonetheless concluded that "a rational trier of fact could find it to be credible.

16   Clearly, it would make a world of difference which version of events the trier of fact believes."

17   Id.

18   Similarly, in the present case, plaintiff paints a wholly different picture of the incident

19   than that of defendants.  Specifically, plaintiff claims that after the use of force, he pleaded for

20   medical attention but defendants refused him access to medical staff.  (ECF No. 37 at 8-9.)

21   Defendants all declare that plaintiff was evaluated by defendant Kesler after the incident and that

22   defendant Kesler filled out a medical report.  (ECF Nos. 29-4; 29-5; 29-6; 29-7; 29-8; 29-13.)

23   While plaintiff's statement concerning the care not received from defendant Kesler may be

24   "hardly overwhelming" in the face of the numerous affidavits of defendants to the contrary, "it

25   would make a world of difference which version of events the trier of fact believes."  904 F.2d at

26   492.  Therefore, for the purposes of this motion for summary judgment, the court will deem

27   plaintiff's medical treatment after the use of force to be disputed.

28   ////

8

Additionally, defendants claim that plaintiff admitted to being evaluated by defendant Kesler after the use of force incident.  (ECF No. 43 at 15.)  Specifically, defendants claim that in his statement of disputed facts (ECF No. 38 at 10), plaintiff admitted that defendant Kesler evaluated him once he was secure in holding cell #2.  (ECF No. 43 at 15.)  However, the statement in question does not appear to actually be the admission that defendants claim it is.

In disputing defendants' claim that plaintiff received medical attention after the incident, plaintiff wrote that defendant "Kesler never physically evaluated Plaintiff after Plaintiff was pepper sprayed in holding tank by Defendant Gustafson (holding tank #4), until Plaintiff was secured into holding cage #2 by Defendants Walker, Blomquist, and Aguilera."  (ECF No. 38 at 10.)  Defendants interpret this statement to mean that plaintiff was evaluated by defendant Kesler once he was secure in holding tank #2.  (ECF No. 43 at 15.)  However, a review of the declaration pages cited to by plaintiff in support of this dispute (ECF No. 37 at 6-9) shows that plaintiff does not admit to being evaluated by defendant Kesler.  In fact, the declaration specifically states that plaintiff was secured in holding tank #2 for approximately three hours while pleading for medical attention, which was not provided.  (Id. at 8-9.)  So, while plaintiff, as a pro se inmate, may use language that is unclear in his statement of disputed facts, the underlying declaration makes it abundantly clear that he was not admitting to having been seen by defendant Kesler.

### 4.    Rules Violation Report

On December 17, 2012, defendant Gustafson issued Rules Violation Report (RVR) ASU-12-12-003 in connection with the events in this case.  (ECF No. 29-9 at 5.)  Plaintiff was found guilty of "Disruptive Behavior with Potential to Lead to Violence."  (Id. at 5-6.)  Plaintiff lost thirty days of good behavior credits as a result of the RVR.  (Id.)

## II.    Legal Standard for Summary Judgment

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.  Crawford–El v. Britton, 523 U.S. 574, 600

1   (1998); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-50 (1986); <u>Nw. Motorcycle Ass'n v.</u>

2   <u>U.S. Dep't of Agric.</u>, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

3   motion asks whether the evidence presents a sufficient disagreement to require submission to a

4   jury.

5          The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

6   or defenses.  <u>Celotex Cop. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to

7   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

8   trial.'"  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986)

9   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

10  under summary judgment practice, the moving party bears the initial responsibility of presenting

11  the basis for its motion and identifying those portions of the record, together with affidavits, if

12  any, that it believes demonstrate the absence of a genuine issue of material fact.  <u>Celotex</u>, 477

13  U.S. at 323; <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

14  party meets its burden with a properly supported motion, the burden then shifts to the opposing

15  party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e);

16  <u>Anderson</u>, 477 U.S. at 248; <u>Auvil v. CBS "60 Minutes"</u>, 67 F.3d 816, 819 (9th Cir. 1995).

17         A clear focus on where the burden of proof lies as to the factual issue in question is crucial

18  to summary judgment procedures.  Depending on which party bears that burden, the party seeking

19  summary judgment does not necessarily need to submit any evidence of its own.  When the

20  opposing party would have the burden of proof on a dispositive issue at trial, the moving party

21  need not produce evidence which negates the opponent's claim.  <u>See e.g.</u>, <u>Lujan v. National</u>

22  <u>Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

23  which demonstrate the absence of a genuine material factual issue.  <u>See</u> <u>Celotex</u>, 477 U .S. at 323-

24  24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a

25  summary judgment motion may properly be made in reliance solely on the 'pleadings,

26  depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

27  should be entered, after adequate time for discovery and upon motion, against a party who fails to

28  make a showing sufficient to establish the existence of an element essential to that party's case,

1    and on which that party will bear the burden of proof at trial.  See id. at 322.  In such a

2    circumstance, summary judgment must be granted, "so long as whatever is before the district

3    court demonstrates that the standard for entry of summary judgment . . . is satisfied."  Id. at 323.

4         To defeat summary judgment the opposing party must establish a genuine dispute as to a

5    material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

6    is material, i.e., one that makes a difference in the outcome of the case.  Anderson, 477 U.S. at

7    248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

8    will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

9    determined by the substantive law applicable for the claim in question.  Id.  If the opposing party

10   is unable to produce evidence sufficient to establish a required element of its claim that party fails

11   in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

12   of the nonmoving party's case necessarily renders all other facts immaterial."  Celotex, 477 U.S.

13   at 322.

14        Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

15   the court must again focus on which party bears the burden of proof on the factual issue in

16   question.  Where the party opposing summary judgment would bear the burden of proof at trial on

17   the factual issue in dispute, that party must produce evidence sufficient to support its factual

18   claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

19   Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

20   or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

21   for trial.  Anderson, 477 U.S. at 249; Devereaux, 263 F.3d at 1076.  More significantly, to

22   demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

23   that a fair-minded jury "could return a verdict for [him] on the evidence presented."  Anderson,

24   477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

25        The court does not determine witness credibility.  It believes the opposing party's

26   evidence, and draws inferences most favorably for the opposing party.  See id. at 249, 255;

27   Matsushita, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

28   proponent must adduce evidence of a factual predicate from which to draw inferences.  American

1   Int'l Group, Inc. v. American Int'l Bank, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

2   dissenting) (citing Celotex, 477 U.S. at 322).  If reasonable minds could differ on material facts at

3   issue, summary judgment is inappropriate.  See Warren v. City of Carlsbad, 58 F.3d 439, 441 (9th

4   Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier

5   of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S.

6   at 587 (citation omitted); Celotex, 477 U.S. at 323 (if the evidence presented and any reasonable

7   inferences that might be drawn from it could not support a judgment in favor of the opposing

8   party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any genuine

9   dispute over an issue that is determinative of the outcome of the case.

10       Defendants' motion for summary judgment included a so-called "Rand notice" (ECF No.

11   84-2) to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of

12   the Federal Rules of Civil Procedure.  See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012); Rand v.

13   Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999);

14   Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

15   **III.   Legal Analysis**

16       Defendants move for summary judgment on the grounds that: (1) Defendants were not the

17   legal cause of plaintiff's injuries; (2) Defendant Gustafson did not use excessive force or retaliate

18   against plaintiff; (3) Defendants were not deliberately indifferent in relation to plaintiff's

19   accommodation chronos, after he was pepper sprayed, and after he was handcuffed; (4) Plaintiff's

20   claims are barred by Heck v. Humphrey; and (5) Defendants are entitled to qualified immunity.

21       For the reasons outline below, the undersigned recommends that defendants' motion be

22   granted concerning the deliberate indifference claims related to the discontinuation of plaintiff's

23   medical accommodations.  Additionally, the undersigned recommends that the motion be granted

24   as to the deliberate indifference claim against defendant Kesler for failure to respond to plaintiff's

25   injuries after the use of force incident.  The undersigned recommends denial of the summary

26   judgment motion as to all other claims.

27   ////

28   ////

**A.     Deliberate Indifference Concerning Medical Accommodations**

Plaintiff alleges that defendants Kesler and Miranda were deliberately indifferent to his medical needs by discontinuing his prior accommodations for orthotic shoes with custom insoles, a lower bunk, cotton bedding, and waist restraints.  Plaintiff claims that the decision to discontinue the four medical accommodations was based upon reasons other than the actual medical record.  (ECF No. 1 at 6-7.)  Specifically, plaintiff alleges that defendant Gustafson suggested that defendant Miranda discontinue the accommodations.  (Id.)

Defendant Miranda moved separately for summary judgment on this claim, which the court addressed in a findings and recommendations.  (ECF No. 52.)  As the court found there and in the undisputed facts above, defendant Miranda was the primary care provider with authority to adopt or rescind plaintiff's medical accommodations.  (See ECF Nos. 30-12 at 11, 15; 52.)  The "Comprehensive Accommodation Chrono" form at HDSP was filled out by defendant Miranda, as was the "Primary Care Provider Progress Note," which comprehensively assessed plaintiff's wellbeing upon his arrival at HDSP.  (ECF No. 30-12 at 11, 15.)  Furthermore, as a registered nurse, defendant Kesler is not authorized to grant, alter, or rescind accommodation chronos.  (ECF No. 29-4 at 3.)

Plaintiff cannot establish that defendant Kesler (or any other defendant besides defendant Miranda) caused any injury that may have resulted from the discontinuation of his medical accommodations because the decision to rescind the accommodations was defendant Miranda's alone.  As such, the court provides a full analysis of this specific claim as it relates to defendant Miranda in the separate findings and recommendations on defendant Miranda's summary judgment motion.  As plaintiff cannot prevail on a claim for deliberate indifference against defendant Kesler concerning his medical accommodations, the undersigned recommends that defendants' motion for summary judgment be granted concerning this claim.

**B.     Deliberate Indifference Concerning Care after Use of Force Incident**

**1.     Legal Standard for Deliberate Indifference to Serious Medical Needs**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment.  This is true

13

1   whether the indifference is manifested by prison doctors in their response to the prisoner's needs

2   or by prison guards in intentionally denying or delaying access to medical care or intentionally

3   interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104-05 (1976)

4   (internal citations, punctuation and quotation marks omitted).  "Prison officials are deliberately

5   indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere

6   with medical treatment.'"  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting

7   Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

8       "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

9   further significant injury or the 'unnecessary and wanton infliction of pain.'"  McGuckin v.

10   Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies v.

11   Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc) (quoting Estelle, 429 U.S. at 104).  Serious

12   medical needs include "[t]he existence of an injury that a reasonable doctor or patient would find

13   important and worthy of comment or treatment; the presence of a medical condition that

14   significantly affects an individual's daily activities; [and] the existence of chronic and substantial

15   pain."  McGuckin, 974 F.2d at 1059-60.

16       To prevail on a claim for deliberate indifference to serious medical needs, a prisoner must

17   demonstrate that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health

18   or safety; the official must both be aware of the facts from which the inference could be drawn

19   that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer v.

20   Brennan, 511 U.S. 825, 837 (1994).

21       "In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the

22   plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's

23   condition could result in further significant injury or the unnecessary and wanton infliction of

24   pain.  Second, the plaintiff must show the defendant's response to the need was deliberately

25   indifferent.  This second prong . . . is satisfied by showing (a) a purposeful act or failure to

26   respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

27   Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation

28   marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v.

1    CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

2          "The indifference to a prisoner's medical needs must be substantial.  Mere 'indifference,'

3    'negligence,' or 'medical malpractice' will not support this claim.  Even gross negligence is

4    insufficient to establish deliberate indifference to serious medical needs."  Lemire, 726 F.3d at

5    1081-82 (internal citations, punctuation and quotation marks omitted); accord, Cano v. Taylor,

6    739 F.3d 1214, 1217 (9th Cir. 2014).  Moreover, "[a] difference of opinion between a physician

7    and the prisoner -- or between medical professionals -- concerning what medical care is

8    appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987

9    (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989)).

10         Whether a defendant had requisite knowledge of a substantial risk of harm is a question of

11   fact.  "[A] factfinder may conclude that a prison official knew of a substantial risk from the very

12   fact that the risk was obvious.  The inference of knowledge from an obvious risk has been

13   described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the

14   burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by virtue

15   of their having turned a blind eye to facts or inferences strongly suspected to be true[.]"  Coleman

16   v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal

17   quotation marks omitted).

18         When the risk is not obvious, the requisite knowledge may still be inferred by evidence

19   showing that the defendant refused to verify underlying facts or declined to confirm inferences

20   that he strongly suspected to be true.  Farmer, 511 U.S. at 842.  On the other hand, prison officials

21   may avoid liability by demonstrating "that they did not know of the underlying facts indicating a

22   sufficiently substantial danger and that they were therefore unaware of a danger, or that they

23   knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise

24   was insubstantial or nonexistent."  Id. at 844.  Thus, liability may be avoided by presenting

25   evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable

26   in light of all the circumstances.  Id. at 844-45; see also Wilson v. Seiter, 501 U.S. 294, 298

27   (1991); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

28   ////

15

## 2.    Defendant Kesler's Deliberate Indifference

In addition to discontinuing his medical accommodations, plaintiff also alleges that defendants Kesler and Miranda ignored his calls for medical assistance after the alleged excessive force incident.  Specifically, plaintiff alleges that the correctional officer defendants in this action sprayed him with pepper spray through a cell door, dragged him out of the cell, pushed him into a wall, twisted his arms, put him in an excessively hot shower, handcuffed him behind his back, and then placed him back in a holding cell.  (ECF No. 1 at 8-10.)  While in the holding cell, plaintiff claims that he could hear the voices defendants Miranda and Kesler in the distance, but that they did not come to his assistance when he pleaded for emergency medical help after the alleged excessive force incident.  (Id. at 10.)

Defendant Kesler alleges that he was summoned immediately after the use of force incident and evaluated plaintiff at that time.  (ECF Nos. 30-4 at 3; 30-13 at 4.)  However, as the analysis above demonstrated, there is an issue of fact as to whether defendant Kesler actually attended to plaintiff after the OC spray.  (See supra, pp. 7-9.)  However, even if the court were to find that defendant Kesler did not respond to evaluate plaintiff's condition, plaintiff still cannot prevail on a deliberate indifference claim against defendant Kesler.

At the time that plaintiff purportedly called for help, he could not see defendant Miranda or nurse Kesler because of the pepper spray in his eyes.  (ECF No. 1 at 10.)  Additionally, plaintiff's complaint states that defendants Miranda and Kesler were "a far distance" away in the R&R medical unit while plaintiff was in holding cage number 2.  (Id.)  During his deposition, plaintiff stated that defendants Miranda and Kesler were "a room or two away" from him when he called out for medical help.  (ECF No. 29-4 at 35-36.)  Defendant Miranda, in his sworn declaration, states that following the examination where he discontinued plaintiff's medical accommodations, he "never again examined [plaintiff] or otherwise interacted with him.  I never heard [plaintiff] call out for medical assistance on the night of December 11, 2012."  (ECF No. 29-3 at 7.)  Likewise, defendant Kesler was at no point alerted to plaintiff's pleas for medical help.  (See ECF No. 30-4 at 2-3.)

////

16

It is undisputed that defendants Kesler and Miranda did not hear plaintiff's calls for medical assistance. While plaintiff claims to have called out for help, there is no evidence on the record that these defendants should have or actually did hear these pleas. It is uncontested that defendants Kesler and Miranda were not in the same room as plaintiff when he called for assistance and defendant Miranda has sworn to the fact that he did not hear plaintiff that evening. (ECF Nos. 29-4 at 7; 29-4 at 35-36.) Even if the court were to make the leap and infer that these defendants **should have** heard plaintiff's calls for help, "an official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot . . . be condemned as the infliction of punishment" under the Eighth Amendment. <u>Farmer</u>, 511 U.S. at 838.

So, while there is a dispute as to whether plaintiff was brought to defendant Kesler for treatment immediately after the incident as defendant Kesler claims (ECF No. 30-4 at 2), there is no dispute that neither defendant Kesler nor defendant Miranda heard plaintiff plea for medical assistance on the evening of December 11, 2012.

Accordingly, because the uncontroverted evidence establishes that these defendants did not hear plaintiff call for help, the court should grant summary judgment for defendant Kesler concerning this portion of the Eighth Amendment claim.

### 3.   <u>Defendant Correctional Officers' Deliberate Indifference</u>

Plaintiff alleges that after the use of force incident, defendants Aguilera, Blomquist, Gustafson, and Walker inadequately decontaminated him by providing only excessively hot water and then failed to provide him with medical assistance while he suffered from the effects of the OC spray for hours. (ECF No. 1 at 9-10.) Plaintiff's declaration states that all of these defendants were present from the time immediately after defendant Gustafson administered the OC spray and issued a Code 1 alarm through the time that plaintiff called out for medical assistance once back in holding tank #2. (ECF No. 37 at 6-9.) Defendant Aguilera claims that he did not respond to the alarm and had no interaction with plaintiff at all on December 11, 2012. (ECF No. 30-5 at 2.) Defendant Gustafson claims that his personal interaction with plaintiff ended after he pepper sprayed him and sounded the alarm. (ECF No. 30-8 at 2-3.) At that point, he only observed defendants Walker and Blomquist handcuff plaintiff and escort him to the

1   shower.  (Id.)  Defendants Walker and Blomquist claim that they escorted plaintiff to be evaluated

2   by nurse Kesler immediately after the decontamination in the shower room.  (ECF Nos. 30-6; 30-

3   7.)

4        These varied accounts establish genuine disputes of material facts surrounding the events

5   that occurred after plaintiff was pepper sprayed by defendant Gustafson.  First, as demonstrated

6   above, there is a genuine dispute as to whether plaintiff was ever evaluated by defendant Kesler.

7   (See supra, pp. 7-9.)  If plaintiff were not assessed by defendant Kesler after the incident and if

8   plaintiff pleaded for medical assistance, then plaintiff could establish a claim for deliberate

9   indifference to medical needs.

10        "First, the plaintiff must show a serious medical need by demonstrating that failure to treat

11   a prisoner's condition could result in further significant injury or the unnecessary and wanton

12   infliction of pain."  Jett, 439 F.3d at 1096.  Plaintiff's allegations concerning his exposure to OC

13   spray and then an excessively hot shower, which did not allow for the spray to be washed off

14   properly (plus the subsequent hours he endured this condition) establishes a serious medical need.

15        "Second, the plaintiff must show the defendant's response to the need was deliberately

16   indifferent.  This second prong . . . is satisfied by showing (a) a purposeful act or failure to

17   respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference."

18   Jett, 439 F.3d at 1096.  Plaintiff demonstrates the first element of this prong by alleging that these

19   four correctional officer defendants failed to respond to his claims of pain and pleas for medical

20   help after he was pepper sprayed.  (ECF No. 37 at 6-9.)  The second element is shown through

21   plaintiff's allegations of ongoing pain and difficulty breathing for approximately three hours after

22   he was sprayed.  (Id. at 8-9.)

23        Plaintiff has supported these allegations with a sworn declaration.  (ECF No. 37.)  While

24   defendants' own declarations paint an entirely different picture of what occurred, the court cannot

25   reject plaintiff's "evidence simply because it consists entirely of the [claimant's] self-serving

26   testimony."  Eaton Acres, 904 F.2d at 487.  While plaintiff's declaration may be "hardly

27   overwhelming, . . . a rational trier of fact could find it to be credible.   Clearly, it would make a

28   world of difference which version of events the trier of fact believes."  Id.

1   Accordingly, the undersigned recommends denying defendants' motion for summary

2   judgment on the Eighth Amendment deliberate indifference claims as to defendants Aguilera,

3   Blomquist, Gustafson, and Walker.

4   **C.   Defendant Gustafson's Use of OC spray**

5   **1.   Justification for the Use of Force**

6   Defendant Gustafson first asserts that his use of force against plaintiff was justified under

7   the circumstances.  Specifically, defendant Gustafson states that plaintiff became agitated after

8   his medical chronos were discontinued.  (ECF No. 30-8 at 2.)  Defendant Gustafson claims that

9   plaintiff yelled obscenities and threw items out of the holding tank and across the R&R unit.  (Id.)

10  Next, defendant Gustafson claims he approached the holding tank with the intention of

11  counseling plaintiff and ordering him to cease his disruptive behavior.  (Id.)  According to

12  defendant Gustafson, plaintiff reacted by yelling, advancing towards the holding tank bars, and

13  thrusting his right arm through the bars towards defendant Gustafson.  (Id.)  In response, from

14  approximately two or three feet away, defendant Gustafson sprayed plaintiff in the face with

15  pepper spray.  (Id.)

16  Plaintiff paints a very different picture of the lead-up to the use of force.  First, plaintiff

17  contends that his agitation was triggered by defendant Gustafson ordering him to turn around so

18  that handcuffs could be placed on him behind his back.  (ECF No. 37 at 5.)  Plaintiff claims that

19  he asked for defendant Gustafson's supervisor and explained how his medical conditions

20  necessitated waist restraints rather than handcuffs behind his back.  (Id. at 5-6.)  Plaintiff alleges

21  that this response agitated defendant Gustafson who subsequently screamed at plaintiff to comply

22  with his orders.  (Id. at 6.)  Then, without further provocation, plaintiff alleges that defendant

23  Gustafson withdrew his canister of OC spray and sprayed plaintiff directly in the face.  (Id.)

24  When a prison official uses excessive force against a prisoner, he violates the inmate's

25  Eighth Amendment right to be free from cruel and unusual punishment."  Clement v. Gomez, 298

26  F.3d 898, 903 (9th Cir. 2002).  "Force does not amount to a constitutional violation in this respect

27  if it is applied in a good faith effort to restore discipline and order and not 'maliciously and

28  sadistically for the very purpose of causing harm.'"  Id. (quoting Whitley v. Albers, 475 U.S. 312,

19

1    320–21 (1986)).  To make this determination, the court may evaluate "the need for application of

2    force, the relationship between that need and the amount of force used, the threat 'reasonably

3    perceived by the responsible officials,' . . . 'any efforts made to temper the severity of a forceful

4    response'" and the extent of any injury inflicted.  Hudson v. McMillian, 503 U.S. 1, 7 (1992).

5          The evidence presented by the parties varies greatly.  When taken most favorably to

6    plaintiff, the evidence demonstrates that there is a genuine dispute of material fact as to the action

7    of defendant Gustafson.  First, defendant Gustafson's claim that plaintiff was throwing items out

8    of his holding tank is contradicted by plaintiff's declaration to the contrary.  (See ECF Nos. 30-8

9    at 2; 37 at 5-6.)  Additionally, defendant Gustafson's assertion that plaintiff lunged at him through

10   the bars of the cell is also contradicted by plaintiff's declaration, which asserts that he did not

11   make any movements towards defendant Gustafson.  (See id.)  So, in viewing the evidence in a

12   light most favorable to the non-moving party, there is a genuine dispute of material fact

13   concerning defendant Gustafson's justification for using the OC spray.  Thus, the only undisputed

14   evidence concerning the justification would be plaintiff's admission that he was questioning

15   defendant Gustafson's orders to submit to handcuffing rather than complying with them.  (ECF

16   No. 37 at 5-6.)

17         Second, while plaintiff himself admits to not immediately complying with instructions to

18   turn around and put his hands behind his back for cuffing (ECF No. 37 at 5-6), such a momentary

19   hesitation to respond while plaintiff is still confined to a holding tank would not necessitate the

20   use of even a small amount of pepper spray.  While the judgments of correctional officers are

21   entitled to wide deference concerning their use of force, Hudson, 503 U.S. at 6, the facts of this

22   situation do not demonstrate that plaintiff was clearly and admittedly participating in an action

23   that required a forceful response from the correctional officer.  From plaintiff's perspective, he

24   was simply asking a question about his medical accommodations and requesting that defendant

25   Gustafson summon a supervisor.  (ECF No. 37 at 6.)

26         Most significantly, plaintiff was confined to his holding cell at the time, separated from

27   defendant Gustafson by the bars of the cell.  Thus, even if plaintiff's questioning of defendant

28   Gustafson was not appropriate, he posed very little threat to defendant Gustafson, nor to the

1  general order of the prison institution.  At this stage of the proceedings, it is only undisputed that

2  defendant Gustafson administered the OC spray into a locked cell, striking plaintiff in the face.

3  (See supra, pp. 6-7.)  Defendant Gustafson's allegations about plaintiff causing a disturbance and

4  throwing items from the cell is disputed by plaintiff's declaration.  Thus, the question of whether

5  defendant Gustafson faced a situation where he was entitled to apply force in good faith is subject

6  to several questions of material fact.  Accordingly, the undersigned recommends denying

7  defendants' motion for summary judgment concerning this claim.

8  **2.      Heck v. Humphrey**

9      Separately, defendant Gustafson argues that plaintiff's excessive force claim is barred

10  pursuant to Heck v. Humphrey because a prisoner cannot advance a claim if its success would

11  necessarily imply the invalidity of a lawful conviction or sentence.  512 U.S. 477, 487 (1994).  In

12  Heck, the Supreme Court held that a state prisoner's claim for damages is not cognizable under 42

13  U.S.C. § 1983 if a judgment in favor of the plaintiff would necessarily imply the invalidity of his

14  conviction or sentence, unless the prisoner can demonstrate that the conviction or sentence has

15  previously been invalidated.  In Edwards v. Balisok, 520 U.S. 641, 646 (1997), the Supreme

16  Court extended this ruling to bar claims under § 1983 for damages and declaratory relief brought

17  by a state prisoner challenging the validity of the procedures used to deprive him of good-time

18  credits.

19      Defendant Gustafson argues that plaintiff's claim for excessive force and retaliation would

20  imply the invalidity of the disciplinary proceedings resulting in the credit loss.  (ECF No. 29-3 at

21  19.)  However, defendant Gustafson errantly bases this line of argument on the assumption that, if

22  plaintiff were to win his claims in this action, the credits that he lost would be reinstated so as to

23  necessarily impact the duration of his detention.  At the screening stage, the court already found

24  that plaintiff failed to state a cognizable claim concerning the purportedly false RVR.  (ECF No. 6

25  at 6.)

26      The cognizable retaliation and excessive force claims that plaintiff is currently proceeding

27  on are that "defendant Gustafson used excessive force in violation of the Eighth Amendment and

28  retaliated against plaintiff for his exercise of First Amendment rights when he intentionally

1   sprayed oleoresin capsicum in plaintiff's face." (Id. at 5.)  Thus, plaintiff is not claiming that the

2   RVR was an act of retaliation, but rather that the use of excessive force was retaliation for

3   plaintiff asserting that his medical accommodations should not have been discontinued.  So,

4   because plaintiff's excessive force and retaliation claims do not invoke the RVR that was filed

5   against him and that resulted in his loss of credits, a finding against defendant Gustafson in this

6   action would not undermine the validity of the RVR proceedings.  See Rodriguez v. CDCR Dept.

7   Review Bd., No. 1:12–cv–00757–AWI–JLT, 2014 WL 7337391, *9 (E.D. Cal. Dec. 22, 2014).

8        Accordingly, the undersigned recommends that the summary judgment be denied

9   concerning this claim.

10       **D.        Defendant Gustafson's Handcuffing of Plaintiff**

11       Plaintiff alleges that defendant Gustafson used excessive force in violation of the Eighth

12   Amendment, retaliated against plaintiff for his exercise of his First Amendment rights, and was

13   deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth Amendment

14   when he handcuffed plaintiff behind his back rather than use waist restraints as authorized by

15   plaintiff's prison chrono.

16       At the time defendant Gustafson allegedly participated in the handcuffing of plaintiff

17   behind his back,[4] plaintiff's medical accommodation for waist restraints instead of handcuffs had

18   been discontinued per the order of the primary care provider, defendant Miranda.  (ECF No. 30-

19   12 at 15.)  While defendant Gustafson was aware that plaintiff was agitated about defendant

20   Miranda's medical conclusions (ECF No. 30-8 at 1-2), the fact remains that plaintiff was not

21   entitled to any special cuffing accommodations at the time he was handcuffed after the use of

22   force incident.  (See ECF No. 30-12 at 15.)

23       Furthermore, as the court recommended in the separate findings and recommendations on

24   defendant Miranda's motion for summary judgment, there was no deliberate indifference to

25   plaintiff's serious medical needs through the discontinuation of the medical accommodations.

26   (See ECF No. 52 at 11-15.)  In particular, the undersigned found that plaintiff's allegations

27   ─────────────

28   [4] Defendant Gustafson denies participating in the handcuffing of plaintiff (ECF No. 30-8 at 2),
    however, this is contradicted by plaintiff's declaration (ECF No. 37 at 7).

1   concerning the discontinuation of the cuffing accommodation merely amounted to second

2   guessing of a medical opinion, which cannot establish a deliberate indifference claim.  (Id. at 13-

3   15.)  Thus, in addition to the accommodations being formally withdrawn, the court has already

4   concluded that there was no impropriety in the manner that the chronos were discontinued.

5          Accordingly, in this scenario, the court cannot find that defendant Gustafson (or any other

6   correctional officer) was deliberately indifferent, acting in a retaliatory fashion, or using

7   excessive force when he followed standard procedure for cuffing an inmate behind his back.  A

8   medical practitioner had officially rescinded the chrono concerning waist restraints, so therefore,

9   the standard cuffing procedure was appropriate under the circumstances.  For these reasons, the

10  court recommends granting summary judgment for defendants on this claim.

11         **E.     Qualified Immunity**

12         Finally, defendants argue that they are entitled to qualified immunity concerning all

13  claims against them.  (ECF No. 30-3 at 20-25.)  If the above recommendations are adopted by the

14  district court, the only remaining claims for which the court to analyze qualified immunity are:

15  (1) Excessive force and retaliation by defendant Gustafson for the use of the OC spray against

16  plaintiff, and (2) Deliberate indifference by defendants Aguilera, Blomquist, Gustafson, and

17  Walker for denying plaintiff access to medical care after the use of force incident.  For the

18  following reasons, the undersigned finds that defendants are not entitled to qualified immunity.

19         In analyzing the qualified immunity defense, the court looks at the facts in the light most

20  favorable to plaintiff.  Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1168 (9th Cir.

21  2013).  "To determine whether an officer is entitled to qualified immunity, a court must evaluate

22  two independent prongs: (1) whether the officer's conduct violated a constitutional right, and (2)

23  whether that right was clearly established at the time of the incident. . . . These prongs may be

24  addressed in either order."  Castro v. County of Los Angeles, 797 F.3d 654, 663 (9th Cir. 2015)

25  (citing Pearson v. Callahan, 555 U.S. 223, 232, 236 (2009)).

26         "To determine that the law was clearly established, we need not look to a case with

27  identical or even 'materially similar' facts."  Serrano v. Francis, 345 F.3d 1071, 1077 (9th Cir.

28  2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739–41 (2002)).  The question instead is whether

1    the contours of the right were sufficiently clear that a reasonable official would understand that

2    his actions violated that right.  Id.; see also Saucier v. Katz, 533 U.S. 194, 202 (2001).

3                    **1.       Excessive Force and Retaliation Claims against Defendant Gustafson**

4            The court, in assessing the merits of defendants' summary judgment motion above,

5    already found that plaintiff has established genuine issues of material fact concerning whether his

6    First and Eighth Amendment rights were violated by defendant Gustafson's use of force.  (See

7    supra, pp.  19-21.) Thus, defendant Gustafson is not entitled to qualified immunity under the first

8    prong of the qualified immunity test.

9            Concerning the second prong, defendant Gustafson claims that he is entitled to qualified

10   immunity because it was not clearly established that discharging a single burst of pepper spray in

11   response to a perceived threat was unlawful.  (ECF No. 30-3 at 22-24.)  Defendant Gustafson's

12   argument requires the court to view the facts in the light most favorable to him, rather than

13   plaintiff, however, and must be rejected.  Specifically, defendant states that California regulations

14   permit correctional staff to use "force that an objective, trained and competent correctional

15   employee, faced with similar facts and circumstances, would consider necessary and reasonable

16   to subdue an attacker, overcome resistance, effect custody, or gain compliance with a lawful

17   order."  Cal. Code. Regs. Tit. 15, § 3268.

18           Additionally, defendant Gustafson refers to Graham v. Connor, 490 U.S. 386, 396 (1989),

19   which held that the "reasonableness of a particular use of force must be judged from the

20   perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

21   However, at this summary judgment stage of the proceedings, the court is entitled to view the

22   evidence in the light most favorable to plaintiff.  Johnson, 724 F.3d at 1168.  The undisputed facts

23   here are that defendant Gustafson sprayed pepper spray at plaintiff through the bars of a locked

24   cell.  Plaintiff submitted a sworn statement claiming that this was done without provocation and

25   with the stated intent of harming plaintiff because of his complaints about the discontinuation of

26   his medical accommodations.  (ECF No. 37 at 5-6.)

27           Thus, based upon this evidence, the court cannot conclude that an officer facing this

28   situation -- i.e. an officer addressing a compliant inmate confined to his cell -- would be

                                                    24

1  reasonable in spraying the inmate in the face with pepper spray for asking a question about his

2  medical accommodations.  Accordingly, the undersigned recommends denying defendant

3  Gustafson's claim of qualified immunity.

4          **2.**        **Deliberate Indifference Claims against Defendants Aguilera,**

5                      **Blomquist, Gustafson, and Walker**

6        The court, in assessing the merits of defendants' summary judgment motion above,

7  already found that plaintiff has established genuine issues of material fact concerning whether his

8  Eighth Amendment rights were violated by defendants Aguilera, Blomquist, Gustafson, and

9  Walker's denial of plaintiff's access to medical care after the use of force.  (See supra, pp. 17-

10  19.) Thus, defendants are not entitled to qualified immunity under the first prong of the qualified

11  immunity test.

12        Defendants do not contest that the right to medical treatment after the use of force incident

13  was clearly established.  Accordingly, defendants are not entitled to qualified immunity.

14  **IV.**   **Conclusion**

15        For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

16        1.      Defendants' motion for summary judgment (ECF No. 30) be granted in part and

17  denied in part;

18        2.      Summary judgment be granted on behalf of defendant Kesler concerning all

19  deliberate indifference claims;

20        3.      Summary judgment be granted on behalf of defendant Gustafson concerning the

21  retaliation, deliberate indifference, and excessive force claims arising from the handcuffing of

22  plaintiff;

23        4.      Summary judgment be denied on behalf of defendants Aguilera, Blomquist,

24  Gustafson, and Walker concerning the deliberate indifference claims arising from the alleged

25  denial of medical treatment after the use of force incident;

26        5.      Summary judgment be denied on behalf of defendant Gustafson concerning the

27  excessive force claim arising from his use of pepper spray against plaintiff; and

28  ////

1    6.    Summary judgment be denied on behalf of defendants Aguilera, Blomquist,

2    Gustafson, and Walker concerning their qualified immunity defenses.

3    These findings and recommendations are submitted to the United States District Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

5    after being served with these findings and recommendations, any party may file written

6    objections with the court and serve a copy on all parties.  Such a document should be captioned

7    "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

8    objections shall be filed and served within seven days after service of the objections.[5]  The parties

9    are advised that failure to file objections within the specified time may waive the right to appeal

10   the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

11   Dated:  March 7, 2017

12

13

14   DEBORAH BARNES
     UNITED STATES MAGISTRATE JUDGE

15

16

17   TIM-DLB:10
     DB / ORDERS / ORDERS.PRISONER.CIVIL RIGHTS / wash.0628.msj2

18

19

20

21

22

23

24

25

26   _____
     [5] Local Rule 304 provides the court with discretion to shorten deadlines concerning objections to
27   findings and recommendations.  The undersigned is exercising that discretion with regard to the
     response to any objections because this is a straightforward matter and the issues have been
28   comprehensively briefed.

26